PROGRESSIVE CASUALTY
INSURANCE CO.,
Plaintiff,

v.

BELMONT BANCORP,
et al., Defendants.

No. 99CV1352.

United States District Court,
S.D. Ohio,
Eastern Division.

Feb. 2, 2001.

Robert Ward Trafford, Porter Wright Morris & Arthur, Columbus, OH, for Progressive Casualty Insurance Co.

Harry Woodrow White, St. Clairsville, OH, James W. Kraus, Doepken, Keevican & Weiss, Pittsburgh, PA, for Belmont Bancorp, Belmont National Bank, Belmont Financial Network, Inc. and Belmont Investment and Financial Services, Inc.

Karen Kelly Grasso, Robert M. Gippin, Thompson Hine & Flory, Cleveland, OH, for William Wallace.

### OPINION AND ORDER

MARBLEY, District Judge.

### I. INTRODUCTION

This matter is before the Court on Motion of Defendants, Belmont Bancorp and Belmont National Bank, to Dismiss Crossclaim of Defendant William Wallace, and on Defendant James J. Fleagane's Motion to Dismiss.[1] The Motions were filed on March 9, 2000 and April 10, 2000, respectively. For the following reasons, both motions are **DENIED**.

### II. PROCEDURAL HISTORY

On December 16, 1999, the Plaintiff, Progressive Casualty Insurance Company ("Progressive"), filed an action averring claims in interpleader and in the nature of interpleader against Belmont Bancorp, three operating subsidiaries of Belmont, twenty-one current and/or former officers and/or directors of Belmont and the plaintiffs in five lawsuits pending in state courts in West Virginia and Ohio. The basis of this Court's jurisdiction is 28 U.S.C. § 1335.[2]

As of November 2, 2000, there were five related pending cases arising out of an allegedly elaborate fraud perpetrated by William Wallace, a former officer and/or director of Belmont National Bank and Belmont Bancorp, and Schwartz Homes, a former customer of Belmont National Bank. The related lawsuits are: *Greentree Financial Servicing Corp. v. Schwartz Homes, Inc.*, No. 99CV040170 (C.P. Tuscarawas County, Ohio filed Oct. 29, 1999); *Fleagane v. Belmont Bancorp*, No. 99C476R1 (Cir. Ct. of Ohio County, W. Va. filed Oct. 21, 1999); *Beall Homes, Inc. v. Belmont National Bank*, No. 99CV419 (C.P. of Belmont County, Ohio filed Nov. 29, 1999); *Heinlein v. Waggoner*, No. 99CV029 (C.P. of Belmont County, Ohio); *Belmont National Bank v. Wallace*, No. 5:00CV75 (N.D.W.Va.). The Plaintiff in this action, Progressive, is not party to any of the pending litigation.

On February 9, 2000, Defendant William Wallace filed his Answer and Counterclaim and Cross–Claim against Defendant Belmont Bancorp and Defendant Belmont National Bank. Mr. Wallace brought Cross and Counterclaims for Declaratory Relief pursuant to

---

**1.** The Motion to Stay filed by William Wallace on August 24, 2000 [45–1], was withdrawn on October 5, 2000, and is now moot.

**2.** Statutory interpleader, 28 U.S.C. § 1335, provides:

(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if

(1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if

(2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

(b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.

28 U.S.C. § 1335.

28 U.S.C. § 2201. In his Counterclaim, Mr. Wallace asserted that he was a defendant in the four pending state court proceedings and sought a declaration that he had a right to a defense and to indemnification in the legal proceedings as an officer and/or director of Belmont Bancorp and Belmont National Bank. In his Cross-claim, he sought the same.

Defendant Fleagane is a shareholder who sued Belmont Bancorp in October of 1999, claiming losses from the loans made to Schwartz Homes. Mr. Fleagane brought suit in his individual capacity and also sought to represent the remaining Bancorp shareholders.

### III. FACTS

Progressive issued a Directors and Officers Liability Insurance Policy ("D & O Policy") to Belmont Bancorp for the period of July 18, 1997 to July 18, 2000. The aggregate limit of liability for each policy year during the policy period is $3,000,000. According to the terms of the exceptions listed in the D & O Policy, Progressive is not liable for a loss attributable to the "DIRECTORS and OFFICERS gaining in fact any profit or advantage to which they were not legally entitled; . . . or brought about or contributed to in fact by the actual fraudulent, dishonest, criminal or unlawful acts of the DIRECTORS or OFFICERS. . . ."

The D & O Policy includes an Entity E & O Liability Endorsement ("E & O Endorsement"). The E & O Endorsement has an aggregate limit of liability of $3,000,000 for each policy year. The E & O Endorsement contains an exemption clause similar to that of the D & O Policy. Under the E & O Endorsement, a loss is defined as:

[A]ny amount which the COMPANY is legally obligated to pay on account of any CLAIM for WRONGFUL ACTS and shall include judgments, settlements and COST OF DEFENSE.

LOSS shall not include:

1. criminal or civil fines or penalties imposed by law;

2. punitive or exemplary damages;

3. the amount of any multiplied damage award which is in excess of the damage award which was so multiplied;

4. taxes

5. the cost to comply with any injunctive or non-monetary relief or any agreement to provide such relief;

6. any unrepaid or outstanding credit extended to any customer;

7. any dividends or other distributions of corporate profits of the COMPANY to any shareholders of the COMPANY; and

8. matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

Progressive also issued a Financial Institute Bond ("Bond") to Belmont National Bank, Belmont Bancorp, Belmont Financial Network and Belmont Investment and Financial Services. The Bond does not provide coverage for any loss caused by an employee once the employee is known to be dishonest or fraudulent as to any matter. The Bond provides:

This bond terminates as to any Employee . . . (a) as soon as any Insured, or any director or officer not in collusion with such person, learns of any dishonest or fraudulent act committed by such person at any time, whether in the employment of the Insured or otherwise, whether or not of the type covered under Insuring Agreement (A), against the Insured or any other person or entity. . . .

On September 15, 1999, Belmont Bancorp and Belmont National Bank submitted a Proof of Loss to Progressive alleging losses in excess of $22,000,000. The loss allegedly resulted from fraudulent or dishonest acts committed by Mr. Wallace in connection with the loans made by Belmont National Bank to Schwartz Homes and customers of Schwartz Homes. Defendant Wallace was an officer and/or director of Defendant Belmont National Bank and Belmont Bancorp.

This matter is now before the Court on the Motion of Defendants, Belmont Bancorp and Belmont National Bank, to Dismiss Crossclaim of Defendant William Wallace [18–1], and on Defendant James J. Fleagane's Motion to Dismiss [33–1].

## IV. ANALYSIS

### A. Motion to Dismiss Cross–Claim

Two Defendants, Belmont National Bank and Belmont Bancorp ("Belmont Defendants"), filed a Motion to Dismiss the Cross-claim of Defendant William Wallace on March 9, 2000. In the alternative, the Belmont Defendants request, in their Motion to Dismiss, that this Court decline to exercise discretionary jurisdiction over Defendant Wallace's Cross-claim.

#### 1. Rule 13(g): Cross–Claim

 First, Defendant Belmont moves to dismiss Defendant Wallace's Cross-claim, brought pursuant to Federal Rule of Civil Procedure 13(g), which provides:

> (g) Cross–Claim Against Co–Party. A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

FED.R.CIV.P. 13(g). The Sixth Circuit has held that Rule 13 should be construed liberally. *Lasa Per L'Industria Del Marmo Societa v. Alexander*, 414 F.2d 143, 146 (6th Cir.1969). If a cross-claim is brought under the "same core of facts" as the original complaint, a court needs no further basis for jurisdiction. *Id.* It is proper, "if defendants are jointly liable [, for] one of them [to] cross-claim against the other ... alleging that a codefendant is primarily liable and should indemnify him for any amount that he may have to pay." 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1431 (2d ed.1990).

 The key question the Court must address, therefore, is whether Mr. Wallace's Cross-claim arises "out of the transaction or occurrence that is the subject matter of either the original action or of a counterclaim therein...." FED.R.CIV.P. 13(g). The "logical relationship test" is the generally accepted standard for "determining whether there is a properly assertable cross-claim." WRIGHT, ET AL., *supra*, § 1432. That test seeks to determine "whether the cross-claim involves many of the same factual and legal issue present in the main action...." *Id.*

Defendant Belmont states that the Complaint in this case concerns the distribution of monies by Progressive for the amount of its liability under the D & O Policy and the Bond, and therefore argues that Mr. Wallace's claim of indemnification from the Belmont Defendants does not relate to the administration of the fund. Mr. Wallace responds that he is a defendant in inter-related and pending suits in both Ohio and West Virginia, and that he has sought indemnification from both Progressive and Belmont in each of the suits.[3] Mr. Wallace is seeking a determination as to whether he is entitled to a defense or indemnification from Belmont Bank in his capacity as an officer/director. Defendant Wallace further argues that his Cross-claim is permissible as it relates to the same transaction and/or subject matter of his Counterclaim.

Applying the logical relationship test, the underlying facts are identical as they relate to the $22,000,000 Proof of Loss submitted on September 15, 1999, by the Belmont Defendants to Progressive. The loss allegedly resulted from fraudulent or dishonest acts committed by Mr. Wallace in connection with the loans made by Belmont National Bank to Schwartz Homes and customers of Schwartz Homes. The Court finds that Defendant Wallace's Cross-claim arises from the same "transaction or occurrence" as the original Complaint filed by Progressive in this matter.

Construing Rule 13(g) liberally, the legal issues, although not identical, are interrelat-

---

3. The Belmont Defendants are seeking dismissal of the Cross-claim in this matter, while the bulk of Mr. Wallace's response addresses the Counterclaims he has filed. The Court finds, however, that the standard for permitting Cross-claims is the same for addressing Counterclaims. WRIGHT, ET AL., *supra*, § 1432.

ed. Essentially, Progressive filed suit in this Court to determine which Defendants to indemnify, and in what amount. The Court can foresee several related court judgments finding for and/or against the Belmont Defendants. By virtue of his Cross-claim, Mr. Wallace would then seek, in a single cause of action before this Court, indemnification from the Belmont Defendants and Progressive for the losses he incurred in the related court proceedings.

The Court therefore finds Mr. Wallace's Cross-claim to be proper and **DENIES** the Belmont Defendants' Motion to Dismiss.

### 2. Jurisdiction over Declaratory Judgment

■ Defendant Belmont next asks this Court to decline to exercise discretionary jurisdiction over Defendant Wallace's Declaratory Judgment Cross Claim. This Court has discretionary jurisdiction over claims brought under the Declaratory Judgment Act. 28 U.S.C. § 2201(a).[4]

The Court finds Defendant Belmont's argument based on the Declaratory Judgment Act to be baseless. This Court has already found that to bring a cross-claim under Rule 13(g), no independent basis for jurisdiction is required, as the cross-claim may exist under the Court's ancillary or pendent jurisdiction. The Court's jurisdiction over claims brought under the Declaratory Judgment Act is discretionary, while its jurisdiction over cross-claims is not, so long as a party complies with Rule 13. Even if this Court were, in its discretion, to dismiss Defendant Wallace's claim for declaratory judgment, he could amend his complaint to include a claim seeking declaratory judgment or indemnification under state law, or he could simply file a claim seeking, as relief, declaratory judgment. *Coleman v. Casey County Bd. of Educ.,* 686 F.2d 428, 430 (6th Cir.1982) (finding that cross-claims, arising out of the same

" 'transaction or occurrence that is the subject matter of the original action,' [ ] are "within a federal court's ancillary jurisdiction.") (citation omitted)). If the Court were to dismiss Mr. Wallace's claim seeking declaratory judgment, he could seek leave of Court to amend his Answer and Cross-claim—simply to re-label his claim for relief as one for indemnification, for declaratory judgment under state law, or as a legal claim seeking, as a remedy, declaratory relief—all which would be proper under pendent jurisdiction. The Court will not engage in this pointless exercise. Defendant Belmont's Motion to Dismiss is therefore **DENIED.**

### B. Fleagane's Motion to Dismiss

Defendant Fleagane has presented four independent bases for his Motion to Dismiss,[5] which will be addressed in turn.

### 1. Failure to Join Necessary and Indispensable Parties

■ The Defendant begins his argument by stating that Progressive has failed to join all of the necessary parties under Federal Rules of Civil Procedure 19(a) & (b). Mr. Fleagane rather imprecisely states that "the shareholders of Belmont Bancorp other than Fleagane, Riley, McKeegan, The Greentree Plaintiffs and the class representatives in Cenkner are indispensable parties who must be joined. . . ."

Typically, a defense of failure to join an indispensable party is brought under Federal Rule 12(b)(7), which provides as a defense "failure to join a party under Rule 19." FED. R.CIV.P. 12(b)(7). Rule 19 provides:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence

---

4. The Act provides:
 Any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

5. Defendant Fleagane also joined in the Motion to Dismiss [14–1, 14–2, 17–1 and 17–2] that was decided by this Court on September 25, 2000. The Court adopts its September 25 Opinion and Order as it relates to the first basis for Defendant Fleagane's Motion to Dismiss [33–1].

complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action. FED.R.CIV.P. 19(a). Rule 19(b) is to be applied only when joinder is not feasible under Rule 19(a)(1)–(2). FED.R.CIV.P. 19(b).

■ The Sixth Circuit has adopted a three-prong test to determine whether joinder is necessary under Rule 19. The Court must determine: (1) "whether a person is necessary to the action and should be joined if possible," Rule 19(a); (2) whether there is personal jurisdiction over the party to be joined; and (3) whether the party is indispensable. *Keweenaw Bay Indian Community v. State of Michigan,* 11 F.3d 1341, 1345 (6th Cir.1993). If the first prong is not met, there is no need to proceed to the other elements of the test. *Id.*

As a threshold consideration under Rule 19(a)(1), this Court finds that complete relief can be afforded to the named parties in the absence of the unnamed shareholders: Progressive would, as a result, indemnify only the named Defendants in this action. Under Rule 19(a)(2)(i), as the unnamed shareholders may seek to intervene in the present litigation before this Court, the unnamed shareholders may protect their interest in the D & O Policy and Bond. Under 19(a)(2)(ii), Progressive, the party who may be subject to "double, multiple, or otherwise inconsistent obligations," is not the party seeking joinder of the shareholders. If Progressive were

concerned with this potential outcome—that is, double or inconsistent obligations—it could have chosen, or still may choose, to join additional defendants. In fact, Progressive has indicated that it may need to join the plaintiffs in *Belmont National Bank v. Otterbacher Manufacturing, Inc.,* Case No. 99–700H (C.P.Richland, Ohio). The Court therefore finds that the unnamed parties are not necessary and need not be joined.

■ This Court further notes that Mr. Fleagane, instead of seeking joinder of the allegedly absent shareholders, is requesting dismissal of this case. The Court finds that Defendant Fleagane's desired outcome for his Motion, that is, dismissal, is rarely the remedy imposed for failure to join. Instead, courts may simply order the absent parties to be joined in the present action. 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1611 (2d ed.1986). The Court does not find that dismissal is appropriate as the unnamed shareholders are not necessary to the present action before this Court.

■ Assuming *arguendo* that this Court were to conclude that the unnamed parties are indispensable in this case and must be joined under Rule 19, Mr. Fleagane states that he is seeking to join: (1) the plaintiffs represented by Attorney David Schaffner who have intervened in *Greentree Financial Servicing Corp. v. Schwartz Homes;* (2) the representative of the plaintiffs in a class action entitled *Eric Cenkner v. Belmont National Bank;* (3) the plaintiffs in *Riley v. Belmont National Bank;* (4) the plaintiffs in *McKeegan v. Belmont National Bank,* and (5) other numerous shareholders.

Progressive filed the following responses: (1) as for the *Greentree* plaintiffs, Progressive is not aware of a claim to the proceeds of the Policies; (2) *Cekner* had not been filed when this case was filed and has since been dismissed; (3) both *Riley* and *McKeegan* were filed prior to the policy year for which Progressive interpleaded the D & O Policy proceeds; and (5) as for the final group shareholders, Mr. Fleagane has pleaded, in related litigation, that the "number of Plaintiffs is so numerous that joinder is impracti-

cable, which is precisely why the Complaint should be dismissed, and why the State Courts should be left to address the issues pertinent to the individual claims before them." This argument escapes the Court's logic or understanding. This matter is before the Court on Defendant Fleagane's Rule 19 request to join unnamed parties, but Defendant Fleagane is also arguing that it is impracticable to join the parties that he has requested to be joined. This appears to the Court to be a collateral attack on the merits of Progressive's interpleader action itself rather than a desire to join the shareholders.

This Court concludes, based on the Plaintiff's representations, that it cannot join parties who are not part of the subject of this interpleader action; who do not represent live causes of action; and who have not been identified with enough specificity by Defendant Fleagane so that this Court could order their joinder. Defendant Fleagane's Rule 19 Motion is therefore **DENIED.**

### 2. Failure to Post and Adequate Bond

Defendant Fleagane argues that the proper bond amount in this matter should have been $122,000,000.00. This Court has the discretion in determining the appropriate amount of the bond. 28 U.S.C. § 1335(a)(1)–(2). The Court finds that this issue is moot, as on September 25, 2000, in its discretion, this Court granted Progressive's Motion for Approval of Bond.

### 3. Independent Claims

Mr. Fleagane next argues that Progressive has exposed itself to an independent claim by Belmont Bank and its shareholders in another forum; thus, since there is a possible basis for independent liability, interpleader must be denied and this case must be dismissed. Progressive responds that this Court should decline to dismiss this action simply because they have raised "the possibility of additional claims among the parties unrelated to the [ ] fund."

■■■■ The "no independent-liability requirement" for an interpleader action is a remnant of the 1925 Interpleader Act which characterized interpleader as purely an equitable remedy. *Calloway v. Miles,* 30 F.2d

14, 15 (6th Cir.1929). The "independent liability" doctrine provides:

> The plaintiff must be a sta[k]eholder only. He must stand indifferent between the claimants, and must have incurred no independent liability to either of them.... No case for interpleader can be made where the holder or debtor has made an independent, personal agreement with some of the claimants regarding the subject-matter claimed, so that he is under a liability to them beyond that which arises from the title to the subject-matter, and in this connection, even if he has in any way made himself liable for the sum demanded to two claimants, he is not entitled to an interpleader.

*Id.*

The no independent-liability requirement, over time, has been disregarded by various courts. 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1706 (2d ed.1986). Several recent courts decisions have found that the presence of independent liability does not abolish an otherwise viable interpleader claim. *See, e.g., Libby, McNeill & Libby v. City Nat'l Bank,* 592 F.2d 504, 507 (9th Cir.1978) (concluding that "the mere potentiality of independent stakeholder liability, separate from liability for the interpleaded fund, will not defeat interpleader jurisdiction."); *Hebel v. Ebersole,* 543 F.2d 14, 17 (7th Cir.1976) (finding that the assertion of independent stakeholder liability "need not vitiate a suit in interpleader as long as the necessary adversity between the interpleaded parties exists in some fashion."); *Builders & Developers Corp. v. Manassas Iron & Steel Co.,* 208 F.Supp. 485, 491 (D.Md.1962) (holding that "even if plaintiff is independently liable to any claimant to the fund, it may maintain this action."). The *Builders & Developers* court summarized the rationale behind the antiquated no independent-liability rule:

> The rationale behind the requirement was that, prior to the promulgation of the present liberal rules governing civil procedure and Federal courts, had a plaintiff with an independent liability to a defendant been allowed to maintain interpleader against

such a defendant there was no opportunity for the defendant to recover an affirmative judgment against the plaintiff. Such a defendant's rights were limited to the fund, and therefore valuable extra claims against the plaintiff might well be lost. Today, however, all controversies regarding the fund and other claims of the parties may be decided in an action in the nature of a bill of interpleader with the salutary result of marshaling.

*Builders & Developers Corp.,* 208 F.Supp. at 490. And, the commentators concluded that the no independent-liability requirement is no longer necessary given contemporary rules of procedure which include "flexible and liberal provisions for joinder of parties and claims, for separate trial of separate issues, ... [and procedures which are] well adapted to disposing of interpleader cases even when independent liability is asserted." WRIGHT, ET AL., *supra,* at § 1706. The commentators sound the death knell for the requirement: the "remedy [ ] has no claim to validity other than it is old." *Id.*

■■■ Strictly interpreting the no independent-liability doctrine, this Court finds that Progressive has not "made an independent, personal agreement with some of the claimants regarding the subject-matter claimed, so that he is under a liability to them beyond that which arises from the title to the subject-matter ..." *Calloway,* 30 F.2d at 15. Defendant Fleagane has not alleged that Progressive has made an agreement with the Belmont Defendants making Progressive independently liable to them beyond the limits of the D & O Policy and the Bond. At most, Defendant Fleagane alleges that Progressive has "exposed itself" to an independent claim by the Belmont Defendants, and only "potentially" exposed itself to a claim by the shareholders.[6]

Irrespective of the fact that Fleagane's argument does not meet the requirements of the doctrine, this Court adopts the modern view that the doctrine has outlived its usefulness. This Court holds that the no independent-liability doctrine is no longer a prohibition to an action in interpleader. Defendant Fleagane has argued that Progressive has exposed itself to an independent claim by Belmont Bank, and potentially its shareholders and therefore cannot maintain an action in interpleader. Given the liberal procedural rules now in force, these potential claims of Belmont Bank and its shareholders may be brought, theoretically, into this action as a counterclaim, a cross-claim, or as an affirmative defense.[7] *McDonough Caperton Shepherd Group, Inc. v. Academy of Med.,* 888 F.2d 1392 (6th Cir.1989) (finding that "[c]ounterclaims may properly be entertained in interpleader actions, and this includes permissive, as well as compulsory, counterclaims.") (citing *Libby, McNeill & Libby v. City Nat'l Bank,* 592 F.2d 504 (9th Cir.1978); *Provident Mut. Life Ins. Co. v. Camerlin,* 534 F.Supp. 318 (W.D.Pa.1982); *Bell v. Nutmeg Airways Corp.,* 66 F.R.D. 1 (D.Conn. 1975)). Defendant Fleagane's Motion based on no independent-liability is therefore **DENIED**.

### 4. Improper Use of Interpleader

■■■ Defendant Fleagane's final basis for his Motion to Dismiss is that Progressive has presented two independent funds that are subject to claims by different entities and, therefore, it is an improper action in interpleader. Progressive counters that main-

---

**6.** Defendant Fleagane has alleged that Progressive's "exposure" is based an unsupported allegation of bad faith and misconduct on the part of Progressive. An unsubstantiated allegation, in and of itself, is not enough to invoke the "clean hands" doctrine. *See, e.g., United States v. Major Oil Corp.,* 583 F.2d 1152 (10th Cir.1978) (finding that "one is not entitled, under the "clean hands" doctrine, to the remedy of interpleader (or the protections provided thereby) if the hazard which he seeks to avoid has been occasioned by his own act.").

Progressive has become potentially and allegedly liable under the D & O Policy and the Bond based on an elaborate fraud perpetrated by a former officer and/or director of Belmont National Bank and Belmont Bancorp, William Wallace, and a former customer of Belmont National Bank, Schwartz Homes. As the facts currently stand, this potential liability does not stem from the acts of Progressive.

**7.** Defendant Belmont, it should be emphasized, has not filed or joined with Defendant Fleagane's no independent-liability Motion and, therefore, does not appear to be concerned with its ability to obtain judgment against Progressive in other courts, or in this Court.

taining one action for the D & O Policy and the Bond is both efficient and practical as it is unclear which defendant will seek entitlement to, or recovery from, which fund.

Although not specifically required by 28 U.S.C. § 1335, several courts have held that the presence of a single fund or liability is a prerequisite to filing an action in interpleader. *See, e.g., Wausau Ins. Cos. v. Gifford,* 954 F.2d 1098, 1100 (10th Cir.1992); *Gaines v. Sunray Oil Co.,* 539 F.2d 1136, 1141 (8th Cir.1976). The Tenth Circuit in *Wausau* dismissed the action in interpleader because there did not exist a single fund or liability. In *Wausau,* there were six insurance funds involved which encompassed different periods of time, different homeowner claimants and six different insurance companies. 954 F.2d at 1101. As aptly stated by the *Wassau* court, "[i]nterpleader [was] not designed to solve all problems associated with multiparty litigation." *Id.*

▮ Following the language of § 1335, this Court finds that the presence of "single fund," by the most literal interpretation of the phrase, is not a requirement for an action in interpleader. The Court finds that there instead exists a continuum of possibilities for what constitutes a single fund, and should more appropriately labeled a single "liability." *Gaines,* 539 F.2d at 1141. The facts of *Wausau,* where there were six insurance company plaintiffs, representing several distinct periods of time, each having its own set of possible defendant-claimants, is at the far end of the continuum where interpleader is inappropriate. The present case does not lie in this extreme end of the continuum and is easily distinguished from the facts of *Wausau.* Here, there is a single insurance company plaintiff, Progressive; a distinct period of time, July 18, 1997 to July 18, 2000; an identifiable set of claimants; and a single source of liability.

Accordingly, the Court concludes that the final basis of Defendant Fleagane's Motion is without merit since the D & O Policy and Bond represent a single source of liability for Progressive, and satisfies the requirements of 28 U.S.C. § 1335. Defendant Fleagane's Motion is therefore **DENIED**.

## V. CONCLUSION

For the foregoing reasons, Motion of Defendants Belmont Bancorp and Belmont National Bank to Dismiss Crossclaim of Defendant William Wallace is **DENIED**, and Defendant James J. Fleagane's Motion to Dismiss is also **DENIED**.

**IT IS SO ORDERED.**