**BEAR STEARNS SECURITY CORP., Plaintiff,**

v.

**900 CAPITAL SERVICES, INC., et al., Defendant.**

**No. 01–CV–4027 (NGG).**

United States District Court, E.D. New York.

June 5, 2002.

---

Arthur D. Felsenfeld, Andrews & Kurth L.L.P., New York, NY, for Bear Stearns Securities Corp.

Wayne David Holly, Klestadt & Winters, LLP, New York, NY, for 900 Capital Services, Inc.

Perry S. Reich, Schapiro & Reich, Lindenhurst, NY, for Tommy E. Thompson.

James Bolt, James Bolt, Attorney at Law, New Berlin, WI, for Robert Kamphius.

Gary Marcantonio, Glen Falls, NY, pro se.

Jennifer Ann Covell, Gulielmetti & Gesmer, P.C., New York, NY, for Raymond W. Cummings.

Raymond W. Cummings, Houston, TX, pro se.

## MEMORANDUM & ORDER

GARAUFIS, District Judge.

Now before the court is a motion to dismiss brought jointly by defendants 900 Capital Services, Inc. and Zimmerman, Axelrad, Meyer, Stern & Wise, P.C. ("900 Capital" and "Zimmerman Axelrad" respectively, together the "Moving Defendants") in this statutory interpleader action brought by plaintiff Bear Stearns Security Corp. ("Bear Stearns") pursuant to 28 U.S.C. § 1335.

### I. Background

The following facts are taken from the complaint and moving papers, and are undisputed unless otherwise noted.

Bear Stearns brought this statutory interpleader to resolve potentially competing claims to certain funds held by Bear Stearns pursuant to its former relationship as clearing broker for accounts of customers of Meyers Pollock Robbins, Inc. ("Meyers Pollock"), as well as certain proprietary trading accounts held by Meyers Pollock with Bear Stearns (hereinafter all funds and accounts will be referred to as the "Accounts").

Among others, 900 Capital asserted a claim to funds in the Accounts in the amount of $118,320. Zimmerman Axelrad

asserted a claim in the amount of $70,000. On February 1, 1999, 900 Capital commenced an action in federal court against Bear Stearns, Meyers Pollock, and Zimmerman Axelrad (the "Feb. 1 suit"). The parties settled the Feb. 1 suit with a settlement agreement (the "Settlement Agreement") pursuant to which Bear Stearns deposited $188,320 in a segregated account (the "Segregated Account"). The Settlement Agreement provided generally for payment of the Segregated Account to the Moving Defendants 90 days after the conclusion of then-ongoing arbitration (the "Thompson Arbitration") pertaining to another claim on the Accounts brought by Tommy Thompson. The Settlement Agreement further provided that "Bear Stearns' obligation to pay the Segregated Funds to 900 Capital and Zimmerman Axelrad will be conditioned on there not being any court order, restraining notice or other similar legal process prohibiting the disbursement of the Segregated Funds . . . ." (Moving Defendants' Motion to Dismiss, Ex. A.) The Thompson Arbitration ended in an award in favor of Thompson for monetary damages and an equitable lien against the funds held in the Accounts. (Bear Stearns' Memorandum of Law in Opposition to Motion to Dismiss, Ex. A.)

Parties, other than the Moving Defendants and Thompson, asserting claims to funds in the Accounts include William C. and Ruth G. Pettijohn, and corporate parties Siegel, Kamphuis, Marcantonio, and Cumings, Allen and Hiers.

## II. Discussion

### A. Legal Standard

In reviewing a motion brought pursuant to FED.R.CIV.P. 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999); *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). The complaint may be dismissed only if "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hoover v. Ronwin*, 466 U.S. 558, 587, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In deciding such a motion, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996) (internal quotation marks and citations omitted).

### B. Statutory Interpleader

"Rooted in equity, the interpleader is a handy tool to protect a stakeholder from multiple liability . . . ." *Washington Elec. Co-op., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir.1993). "The purpose of a statutory interpleader action is to avoid the problem of multiple, conflicting claims to a single fund by forcing all 'claimants' to resolve their claims in one action." *Rubinbaum LLP v. Related Corporate Partners V, L.P.*, 154 F.Supp.2d 481, 486 (S.D.N.Y. 2001). "An interpleader action is normally conducted in two stages, the first to determine whether the stakeholder is entitled to bring an interpleader action, and the second to determine the rights of the competing claimants to the fund." *Avant Petroleum, Inc. v. Banque Paribas*, 853 F.2d 140, 143 (2d Cir.1988). At the initial stage, the burden is on the plaintiff to show that "[t]wo or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property

...." 28 U.S.C. § 1335(a)(1); *see Rubinbaum*, 154 F.Supp.2d at 486. The money or property in question must be $500 or more, and the full value must be paid into the registry of the court. § 1335(a). In applying § 1335, the Supreme Court has held that the interpleader statute "is remedial and to be liberally construed." *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967).

### C. The Moving Defendants' Argument

■ The Moving Defendants present this court with a single argument against allowing this interpleader action. They contend that an interpleader action can only stand where there is a single, identifiable fund, and that the creation of the Segregated Account in the case at hand destroyed the integrity of the single fund sufficient to bar an interpleader action here.

In presenting their argument, the Moving Defendants rely on *Wausau Ins. Cos. v. Gifford*, 954 F.2d 1098 (5th Cir.1992). In *Wausau*, a real estate developer built and sold homes over a four year period. Subsequent to the sales, the foundations of the homes began to crack, causing uneven settling. The homeowners brought suit against the real estate developer, and, in the course of over thirty separate cases, each of six insurers who had covered the developer was also named a defendant. The insurers had all insured the developer over different time periods for differing amounts. The policies alternated between primary and excess coverage. The six insurance companies attempted in state court to consolidate the proceedings, but the state court declined. The insurance companies then attempted to bring an interpleader action in federal court. The Court of Appeals for the Fifth Circuit, in a three page opinion, affirmed the district court's dismissal of the interpleader action, holding "[interpleader] does not provide a method of forum shopping for parties disappointed with the outcome of their consolidation motions in state court." *Wausau*, 954 F.2d at 1101. *Wausau* further held that "[i]nterpleader actions require a single, identifiable fund. We do not have such a fund in this case. Interpleader cannot be used to consolidate cases involving diverse claims against diverse funds." *Id.* The Moving Defendants now urge this court to find similarly a lack of a single, identifiable fund, and accordingly to dismiss this claim as in *Wausau*.

At least one court has interpreted the scope of *Wausau* to be decidedly less sweeping than the Moving Defendants would make it appear. *Progressive Cas. Ins. Co. v. Belmont Bancorp*, 199 F.R.D. 219 (S.D.Ohio 2001). In that case an insurer, Progressive Casualty Insurance Company ("Progressive"), issued both a policy and a bond to Belmont Bancorp ("Belmont"). After Belmont incurred heavy financial losses, numerous parties brought competing claims on Belmont's assets held by Progressive. Examining *Wausau*, the *Progressive* Court held:

> Following the language of § 1335, this Court finds that the presence of a "single fund," by the most literal interpretation of the phrase, is not a requirement for an action in interpleader. The Court finds that there instead exists a continuum of possibilities for what constitutes a single fund, and should more appropriately be labeled a single liability. That facts of *Wausau*, where there were six insurance company plaintiffs, representing several distinct periods of time, each having its own set of possible defendant-claimants, is at the far end of the continuum where interpleader is inappropriate. Here, there is a single insurance company plaintiff, Progressive; a distinct period of time ...; an identifiable

set of claimants; and a single source of liability.

*Progressive,* 199 F.R.D. at 228.

I note that the attempted application of § 1335 to the facts before the *Wausau* Court threatened to expand the statute beyond its understood purpose of efficiently resolving multiple claims to a common fund without subjecting the stakeholder to unfair liability. *See State Farm Fire & Cas. Co. v. Tashire,* 386 U.S. 523, 530–534, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). Accordingly, *Wausau* held that "[i]nterpleader is not designed to solve all problems associated with multiparty litigation.... Consequently, although the Insurance Companies have urged the benefits of consolidation, their attempted use of interpleader to obtain federal jurisdiction and a form of consolidation must be unavailing." *Wausau,* 954 F.2d at 1101. There is no similar threat before this court of illegitimately expanding § 1335. The case at bar, where there is a single plaintiff, a discrete period of time, and a single source of liability with respect to the Accounts of Meyers Pollock, is well within the traditional ambit of interpleader. *See e.g., Fidelity Brokerage Services, LLC v. Bank of China,* No. 01 CIV. 4024, 2002 WL 424670 (S.D.N.Y.2002) (interpleader action legitimately brought to resolve potentially competing claims to funds and securities held in several brokerage accounts); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente,* No.98–1756, 2001 WL 11070 (S.D.N.Y.2001) (interpleader action legitimately brought to resolve claims of multiple parties alleging elaborate fraud with respect to funds held in account, converted into escrow account upon receipt of competing claims, opened with bank and maintained by plaintiff); *Wasserman v. Fidelity & Deposit Co. of Maryland, Inc.,* 490 F.Supp. 564 (S.D.N.Y.1979) (interpleader legitimately brought to resolve claims to funds held in escrow accounts). Consequently, I find the case at bar considerably more analogous to the case before the *Progressive* Court than the case before the *Wausau* Court.

I agree with the analysis in *Progressive,* which concludes that *Wausau* represents a far point on a continuum for determining when action under § 1335 is appropriate. As in *Progressive,* the interpleader action before this court does not involve the disaggregated funds at stake in *Wausau.* Accordingly, I am not persuaded by the Moving Defendants argument that this interpleader must fail for involving funds identified in more than one account.

Furthermore, I am not persuaded that there is effectively more than one fund before the court as contemplated by § 1335. The Moving Defendants point to the Segregated Account as establishing a separate fund sufficient to defeat action under § 1335. But the Segregated Account was a provisional account, contingent on "there not being any court order, restraining notice or other similar legal process prohibiting the disbursement of the Segregated Funds ...." (Moving Defendants' Motion to Dismiss, Ex. A.) An equitable lien, defined as "[a] right, not existing at law, to have specific property applied in whole or in part to payment of a particular debt or class of debts," falls precisely into the category of "similar legal process" designated in the Settlement Agreement. BLACK'S LAW DICTIONARY 539 (6th Ed.1990); *see Active Fire Sprinkler Corp. v. The United States Postal Serv.,* 811 F.2d 747 (2d Cir.1987) (equitable interest in fund superceded interests already disbursed, creating liability in stakeholder). An equitable lien was awarded in the Thompson Arbitration against all Meyers Pollock funds held by Bear Stearns, triggering the contingency clause.

By virtue of the contingency clause, actual separation of the funds was never more than a potentiality. Instead, Bear

Stearns was obliged to continue to hold the funds subject to competing claims stemming from a common source of liability. Therefore, the separate account never created a separate fund in a manner removing the funds held by Bear Stearns in the Segregated Account from the ambit of § 1335. The funds held provisionally in the Segregated Account remained part of the common fund subject to liability stemming from Meyers Pollock. Thus, the motion before this court presents no bar to Bear Stearns taking advantage of the federal interpleader statute.

### III. Conclusion

For the foregoing reasons, the Moving Defendants' motion to dismiss is DENIED in its entirety.