*576 OPINION OF THE COURT
Barry A. Cozier, J.
Motion sequence Nos. 001 and 002 are consolidated for disposition. In motion sequence No. 001, The Bank of New York Company, Inc. (BNY) moves, pursuant to CPLR 3211, for dismissal of plaintiffs’ claims as asserted against it, and for an order striking the jury demand to the extent that any claims remain. In motion sequence No. 002, Citibank, N. A. (Citibank), moves, pursuant to CPLR 3211 (a) (7), for dismissal of plaintiffs’ third and sixth causes of action for failure to state claim upon which relief could be granted.
FACTUAL ALLEGATIONS
This action arises out of the plaintiffs’ claims that defendants paid over 130 unauthorized checks, amounting to approximately $379,000, which were drawn on plaintiffs’ respective checking accounts. Plaintiffs’ accounts consisted of a corporate checking account maintained by plaintiff The Magazine Press, Inc. (The Press), and a joint personal checking account maintained by plaintiffs Jonathan Wells, the president of The Press, and Jane Wells, his wife. Plaintiffs maintain that, during the period of April 1995 through July 1998, their bookkeeper, Luis Nunez, drew checks upon their accounts by forging the signature of Jonathan Wells, who was an authorized signatory on both accounts. These checks allegedly were made payable to either Nunez or to vendors with whom The Press regularly did business, and were deposited into Nunez’s personal account in Citibank. Plaintiffs commenced this action for compensatory damages, alleging six causes of action: against BNY, individually, for conversion (first); breach of contract (second); two claims of commercial bad faith (fourth and fifth); against Citibank, individually, for commercial bad faith (sixth); and against BNY and Citibank for negligence (third).
In support of its dismissal motion, BNY argues that the claims asserted in the complaint are legally insufficient; are statutorily barred by UCC 4-406 (4) to the extent of those corporate checks paid prior to August 1997; that The Press’ claims are contractually barred in that The Press failed to timely report the alleged unauthorized checks; and that the *577 payment of the subject corporate checks was ratified by The Press’ corporate resolution dated August 25, 1998.*
DISCUSSION
On a motion pursuant to CPLR 3211 (a) (7), the court is limited to ascertaining whether the pleadings state any cause of action, and may not consider whether there is evidentiary support for the complaint. (Guggenheimer v Ginzburg, 43 NY2d 268 [1977].) The complaint must be liberally construed in the light most favorable to the plaintiff, and all factual allegations must be accepted as true. (Supra; Morone v Morone, 50 NY2d 481 [1980].) Affidavits and other evidence submitted by plaintiffs may be considered for the limited purpose of remedying any defects in the complaint, thus preserving inartfully pleaded, but potentially meritorious claims. (Rovello v Orofino Realty Co., 40 NY2d 633 [1976].) Although the facts pleaded are presumed to be true and are accorded every favorable inference in a motion addressed to the sufficiency of the complaint, where the allegations consist of bare legal conclusions, as well as factual claims which are either inherently incredible or flatly contradicted by documentary evidence, they are not entitled to such consideration. (Fisher v Maxwell Communications Corp., 205 AD2d 356 [1st Dept 1994].)
Plaintiffs have not sufficiently pleaded a claim of conversion. As noted by BNY, a customer’s bank account is merely a debt owed to it by the bank and funds deposited are not sufficiently specific and identifiable, in relation to the bank’s other funds, to support a claim for conversion against a bank. (Calisch Assocs. v Manufacturers Hanover Trust Co., 151 AD2d 446, 448 [1st Dept 1989]; see also, Chemical Bank v Ettinger, 196 AD2d 711, 714 [1st Dept 1993].) Therefore, that branch of BNY’s motion seeking dismissal of the first cause of action for conversion is granted.
Plaintiffs’ second cause of action for breach of contract consists essentially of their assertions that BNY honored over 130 allegedly forged checks without their authorization, in breach of the parties’ agreement. A checking account creates a contractual relationship between the drawee bank and its customer. (Calisch Assocs. v Manufacturers Hanover Trust Co., supra; see also, Merrill Lynch, Pierce, Fenner & Smith v Chemical Bank, 57 NY2d 439, 444 [1982] [“the underlying relation *578 ship between a bank and its depositor is the contractual one of debtor and creditor * * * implicit in which is the understanding that the bank will pay out its customer’s funds only in accordance with the latter’s instructions”].) Thus, plaintiffs have sufficiently stated a breach of contract claim.
BNY attempts to have The Press’ breach of contract claim dismissed to the extent of those corporate checks paid prior to August 1997, based upon the one-year limitation set forth in UCC 4-406 (4). This section mandates dismissal of those causes of action pertaining to forged checks which the plaintiffs failed to discover and report within one year after receiving the bank statement reporting such checks. (See, Woods v MONY Legacy Life Ins. Co., 84 NY2d 280 [1994]; see also, Touro Coll, v Bank Leumi Trust Co., 186 AD2d 425, 426 [1st Dept 1992] [dismissal under UCC 4-406 (4) is warranted “ ‘[w]ithout regard to care or lack of care of either the customer or the bank’ ”].)
Plaintiffs allege that the forged checks were written by Nunez from the corporate account between April 1995 and July 1998. Pursuant to UCC 4-406 (4), The Press is precluded from continuing any action based on such checks, where it did not report the alleged fraud within one year after those checks and the bank statements with respect thereto were made available to it. (See, Woods v MONY Legacy Life Ins. Co., supra; see also, Mansi v Gaines, 216 AD2d 536, 538 [2d Dept 1995].)
The Press’ claim is further limited by the notification requirement set forth in BNY’s rules and regulations, which required The Press to promptly examine its bank statements and to notify the bank of errors, discrepancies or irregularities in its statements or canceled checks within 15 days of receipt of the statement. If such notice was not given by The Press, the statements and canceled checks were deemed correct and binding on it, and BNY would be released of all liability to it. Contrary to plaintiff’s arguments, it has been held that compliance with notification requirements set forth in the drawee bank’s rules and regulations is required for account holders to recover. (See, Peter Marino, Ltd. v Bank of N. Y., 250 AD2d 485 [1st Dept 1998].) Therefore, The Press is precluded from continuing any action based on alleged forged checks, where it did not report the alleged fraud within 15 days after the monthly statement showing the discrepancy was received by it.
BNY also maintains that The Press ratified the alleged unauthorized checks in a corporate resolution dated August 25, 1998 (the 1998 resolution), provided to BNY when The Press opened a new corporate checking account in August 1998. BNY *579 specifically relies on the language set forth in the 1998 resolution, which provides as follows: “That any withdrawals of money or other transactions heretofore had on behalf of the Corporation with the Bank be and hereby are ratified, confirmed and approved, and that the Bank be and hereby is authorized to rely upon the authority conferred by this resolution until the receipt by it of a certified copy of a resolution of this Board of Directors revoking or modifying the same”.
The Press argues that it did not ratify the unauthorized corporate checks and that, in any event, any alleged ratification was revoked, in accordance with the terms of the 1998 resolution, by The Press’ Board of Directors’ resolution dated January 21, 1999. The law is well settled that a party’s intention should be determined from the language employed within the four corners of the agreement and where the language is clear and unequivocal, interpretation is a matter of law to be determined by the court. (Hartford Acc. & Indent. Co. v Wesolowski, 33 NY2d 169 [1973]; see also, American Express Bank v Uniroyal, Inc., 164 AD2d 275 [1st Dept 1990], Iv denied 77 NY2d 807 [1991].) Even assuming, arguendo, that The Press ratified and approved BNY’s prior transactions, as is claimed by BNY, it is clear from the language of the 1998 resolution that The Press was permitted to revoke its ratification or approval by providing BNY with a certified copy of a resolution revoking such ratification or approval, which it did.
Therefore, that branch of BNYs motion to dismiss the breach of contract claim is granted only to the extent of barring The Press from continuing any action on those corporate checks that were not reported within 15 days after its receipt of the monthly statements showing the discrepancies.
Plaintiffs do not oppose the dismissal of their claim in negligence. Moreover, a cause of action for negligence cannot be based on a breach of a contractual duty between BNY and plaintiffs. (Calisch Assocs. v Manufacturers Hanover Trust Co., supra.) Therefore, that branch of BNY’s motion for dismissal of the third cause of action in negligence is granted.
Plaintiffs’ fourth and fifth causes of action in commercial bad faith are premised upon BNY’s policy of not reviewing signatures on checks written for $2,500 or less and BNYs failure to detect the “obvious” nature of Jonathan Wells’ forged signatures. A claim for commercial bad faith is stated “[w]here a depository bank acts dishonestly — where it has actual knowledge of facts and circumstances that amount to bad faith, thus itself becoming a participant in a fraudulent scheme”. *580 (Prudential-Bache Sec. v Citibank, 73 NY2d 263, 275 [1989]; see also, Burns & Beck v Citibank, 226 AD2d 142 [1st Dept 1996].) Thus, to sustain a bad-faith claim, plaintiffs must allege facts inculpating the principals of the bank as actual participants in unlawful activity. (Supra, at 143.) Neither a lapse of “ ‘wary vigilance’ ” nor “ ‘suspicious circumstances which might well have induced a prudent banker to investigate’ ” constitute an allegation of bad faith. (Prudential-Bache Sec. v Citibank, supra, at 276; see also, Calisch Assocs. v Manufacturers Hanover Trust Co., supra.) Since plaintiffs fail to allege any complicity or dishonesty by BNY that would support their claims for commercial bad faith, that branch of BNYs motion for dismissal of plaintiffs’ fourth and fifth causes of action is granted.
BNY also moves for an order striking plaintiffs’ request for a jury demand as set forth in paragraph 7 of its complaint based upon the account agreements and corporate resolution wherein the parties waived their rights to a jury trial. This branch of BNYs application is granted without opposition.
In motion sequence No. 002, Citibank moves for dismissal of plaintiffs’ claims asserted against it, namely, the third and sixth causes of action for negligence and commercial bad faith, respectively. Plaintiffs do not oppose dismissal of their third cause of action in negligence. However, they claim that their commercial bad-faith claim against Citibank is legally sufficient. This claim is premised upon Citibank’s payment of the unauthorized checks and its conduct in permitting the deposit of at least five corporate checks in Nunez’ Citibank account, which were stamped “for deposit only”. The plaintiffs have failed to establish facts inculpating Citibank’s officials as actual participants in any unlawful activity. (Touro Coll, v Bank Leumi Trust Co., supra; see also, Retail Shoe Health Commn. v Manufacturers Hanover Trust Co., 160 AD2d 47 [1st Dept 1990].) A bank’s failure to act in a commercially reasonable manner and to detect a check-forgery scheme does not amount to bad faith. (Burns & Beck v Citibank, supra.) Therefore, Citibank’s motion to dismiss plaintiffs’ third and sixth causes of action against it is granted.
Accordingly, it is ordered that, in motion sequence No. 001, that branch of BNYs motion for dismissal of plaintiffs’ claims against it is granted, only to the extent of severing and dismissing the first, third, fourth and fifth causes of action; the second cause of action is dismissed only to the extent of The Press’ claim on those allegedly unauthorized corporate checks which *581 it failed to report to BNY within 15 days after the receipt of the monthly statement containing those checks; and the motion is denied in all other respects; and it is further ordered that, in motion sequence No. 001, that branch of BNYs motion for an order striking plaintiffs’ request for a jury demand, as set forth in paragraph 7 of their complaint, is granted; and it is further ordered that, in motion sequence No. 002, Citibank’s motion to dismiss plaintiffs’ third and sixth causes of action against it is granted, and the complaint against Citibank is dismissed; and it is further ordered that the remainder of the action shall continue; and it is further ordered that the clerk is directed to enter judgment accordingly.

 BNY withdrew its argument based on the “repeater rule” embodied in UCC 4-406 (2) in its reply papers.