FIDELITY BROKERAGE SERVICES, LLC, and FIDELITY SERVICE CO., INC., Plaintiffs,

v.

BANK OF CHINA, Non–Ferrous BM Corp., Shumin Wang, Helen Zhou, John Chou a/k/a Qiang Zhou, Sherry Liu a/k/a Sherry Ping Liu and Daozhong Liu, Defendants.

No. 01 CIV. 4024(DC).

United States District Court, S.D. New York.

March 18, 2002.

Bingham, Dana, L.L.P., By Mark M. Elliott, Joshua Dorchak, New York City, for Plaintiffs.

Coudert Brothers, By Richard A. De Palma, Law Offices of Steven L. Kessler, By Steven L. Kessler, Eric M. Wagner, Alfieri, Frohman & Primoff, LLP, By Paul Frohman, New York City, for Defendants.

## MEMORANDUM DECISION

CHIN, District Judge.

Plaintiffs Fidelity Brokerage Services, LLC and Fidelity Service Co., Inc. (respectively, "FBS" and "FSC," and together, "Fidelity") brought this interpleader action pursuant to Fed.R.Civ.P. 22 and the Federal Interpleader Act, 28 U.S.C. §§ 1335, 1397, and 2361, to resolve potentially competing claims to certain funds and securities Fidelity holds in several brokerage accounts and restrained pursuant to an order of attachment. Defendants Non–Ferrous BM Corp., Shumin Wang, Helen Zhou, John Chou, Sherry Liu, and Daozhong Liu brought counterclaims (the "counterclaimant defendants") against Fidelity alleging bad faith and wrongful attachment, as well as cross-claims against Bank of China (the "Bank") for wrongful attachment. Fidelity moves for dismissal of the counterclaims, discharge from this action, permanent injunction against any future proceedings resulting from its control over the funds and securities, and attorneys' fees and costs. In opposing the motion, counterclaimant defendants have provided the Court with extrinsic materials. Because I have considered those materials, I must convert

Fidelity's motion to dismiss to a motion for summary judgment.[1] *See Amaker v. Weiner,* 179 F.3d 48, 50–51 (2d Cir.1999); *Kreiss v. McCown De Leeuw & Co.,* 37 F.Supp.2d. 294, 298 n. 3 (S.D.N.Y.1999) (citing *Fonte v. Bd. of Managers of Continental Towers Condo.,* 848 F.2d 24, 25 (2d Cir.1988); Fed.R.Civ.P. 12(b)). For the reasons set forth below, Fidelity's motion is granted in all respects.

## BACKGROUND

### A. *Facts*

The facts set forth below are drawn from the pleadings, the parties' motion papers, and supporting materials, and are construed in the light most favorable to counterclaimant defendants. Unless otherwise indicated, these facts are not in dispute.

FBS is a Delaware corporation with its principal place of business in Massachusetts. (Compl.¶ 2). FSC is a Massachusetts corporation with its principal place of business in Massachusetts. (*Id.* ¶ 3). Neither Fidelity entity is a bank, and the Fidelity accounts held for clients are securities accounts, not bank accounts. (DiGennaro Reply Aff. ¶¶ 5–6). Fidelity's affiliate, National Financial Services ("NFS"), is a clearing firm located in New York; NFS clears and holds securities and funds for FBS and its customers. (Piccione Aff. ¶¶ 4–5). NFS holds securities either in certificate form, located in New York, New York, or in uncertificated book-entry form, with related records also located in New York, New York. (*Id.* ¶ 7). Defendants

Wang, Zhou, and Daozhong Liu (the "Wang Defendants") opened their accounts in Paramus, New Jersey, and contend that, in addition to securities, their accounts contain cash reserves that may not be located in New York. (Kessler Decl. Ex. B ¶ 5).

On April 9, 2001, the U.S. Marshal for the Southern District of New York served an Order of Attachment (the "Order") issued by this Court on March 13, 2001, with accompanying warrant, upon Fidelity's Broadway Branch in New York City. (DiGennaro Aff. ¶ 14 & Ex. A). The warrant commanded the Marshal to "attach all estate, real and personal, including money and banknotes, bonds, promissory notes and other instruments for the payment of money ... of the defendant or defendants whose property is attached within this district," including all rights and shares of stock in Fidelity's possession or under its control. (Elliott Aff. Ex. F). The warrant referred Fidelity to the Order for the names of the defendants whose property was attached, and required that Fidelity deliver such property into the Marshal's custody *"without delay."* (*Id.*). The warrant closed with the following admonition:

> TAKE NOTICE THAT, AFTER SERVICE HEREOF UPON YOU, NO DEMAND OR PROPERTY HEREBY ATTACHED CAN BE LAWFULLY RELEASED, BY OR OTHERWISE EXCEPT BY THE DIRECTION OF THE UNITED STATES MARSHAL
> ....

(*Id.*).

Fidelity forwarded the Order to its Legal Support Department in Boston to be-

---

1. In considering whether to convert a motion to dismiss to a motion for summary judgment, the relevant inquiry is "whether the non-movant ... was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Mate v. New York State Dep't of Labor,* No. 98 Civ. 1266, 1998 WL 770554, at *1 (S.D.N.Y. Nov.2, 1998) (quoting *Krijn v.*

*Pogue Simone Real Estate Co.,* 896 F.2d 687, 689 (2d Cir.) *aff'd,* 930 F.2d 910 (2d Cir. 1991)). Here, counterclaimant defendants— the non-movants—have submitted materials outside the pleadings. Thus, they have not been taken by surprise or deprived of an opportunity to present facts outside the pleadings.

gin investigating the brokerage accounts held on behalf of defendants NFBM, Wang, Zhou, Chou, Sherry Liu, and Daozhong Liu that might be affected by the Order. (Compl. ¶ 14; DiGennaro Aff. ¶¶ 15–16). On or about April 13, 2001, counsel for the Bank served Fidelity with a copy of a Freezing Injunction and Order to Restrain Assets Worldwide issued by the High Court of Justice in London, England (the "London Order"), which appeared also to attach property held by Fidelity on behalf of defendants Wang and Sherry Liu. (DiGennaro Aff. ¶¶ 17–18 & Ex. B). The NFBM Defendants sent Fidelity a letter dated April 20, 2001, informing Fidelity that the High Court of Justice did not have jurisdiction over their funds. (DiGennaro Aff. Ex. C). They demanded immediate release of their property, and advised Fidelity that if it failed to comply with their demand, they would hold Fidelity directly responsible for any resultant damages. (Id.). Fidelity responded by letter dated May 3, 2001, and informed the NFBM defendants that it had attached their assets pursuant to the Order issued by this Court: "Pursuant to the Order, we have restricted all known assets registered in the names of the defendants, inclusive of an account registered in the name of [NFBM], pending further order of the Court." (Kessler Decl. Ex. A). Thus, pursuant to the Order, Fidelity attached an account opened by the NFBM defendants at a Fidelity branch in New Jersey. (Kessler Decl. ¶ 2).

By letter dated April 25, 2001, the Wang Defendants informed Fidelity that certain defendants' trust accounts were not subject to the Order because the accounts were opened in a branch in New Jersey; the letter also asserted that Fidelity's "continued freeze of the [ ] accounts will only exacerbate the damages for which Fidelity will be held liable." (DiGennaro Aff. Ex. E). On May 9, 2001, the Wang

Defendants sent Fidelity another letter stating that all of their accounts were unlawfully restrained because the accounts were located in New Jersey and outside the jurisdiction of the Order; this letter also referenced legal authority previously provided Fidelity in support of their position. (Id. Ex. F). Again, these defendants demanded that Fidelity immediately release their accounts from any restraint. (Id.).

By letter dated May 2, 2001, counsel for Fidelity requested a legal opinion from counsel for the Bank setting forth the legal authority by which the Bank sought to attach certain trust accounts. (Id. Ex. G). The letter also explained that Fidelity would lift the attachment on those accounts on May 4, 2001 "to give [the Bank] adequate time to prepare a response." (Id.). Counsel for the Bank responded by letter dated May 4, 2001, providing Fidelity with legal authority in support of its claim that the Order properly attached trust accounts held by defendants Chou and Sherry Liu. (Id. ¶ 22 & Ex. H). Fidelity did not lift the attachment.

## B. *Prior Proceedings*

### 1. *The Related Action*

In a related case, *Bank of China, New York Branch v. N.B.M., et al.*, 01 Civ. 0815(DC), the Bank filed suit against numerous corporate and individual defendants (including the defendants named in this action) alleging that the defendants defaulted on their contractual loan obligations and conspired in violation of common law and the Racketeer Influenced and Corrupt Organizations Act to defraud the Bank of $34,000,000 in loan proceeds. On March 13, 2001, the Bank moved *ex parte* for an order of attachment pursuant to Fed.R.Civ.P. 64 and N.Y. C.P.L.R. §§ 6201 and 6211(a) (McKinney 1980) (*i.e.*,

the "Order"), and on March 14, 2001, the Bank's application ordering a levy upon any of the defendants' assets in New York was granted by Judge Jones. •The Bank also obtained similar orders in England and the Cayman Islands.

On March 15, 2001, the Bank posted a $5,000 undertaking as ordered by the Court and delivered copies of the Order to the U.S. Marshal. On March 21, 2001, the Bank filed a motion to confirm the Order as required by C.P.L.R. § 6211(b), and on April 9, 2001, the U.S. Marshal served the Order upon Fidelity. On or about May 18, 2001, certain defendants moved to vacate the Order, and on July 5, 2001, the Bank moved for a preliminary injunction restraining defendants' assets, including assets held by Fidelity. That case was reassigned to me on August 16, 2001. By Memorandum Decision dated March 18, 2002, the Bank's motion to confirm the Order was granted and the cross-motion to vacate the Order was denied. The Bank's motion for a preliminary injunction was also granted.

### 2. *The Instant Interpleader Action*

Fidelity filed the interpleader complaint in this action on May 11, 2001 "to resolve potentially competing claims to funds and securities" held by Fidelity in various brokerage accounts. The Wang Defendants filed their answer on June 6, 2001, asserting a counterclaim against Fidelity for bad faith in honoring the Order and wrongful attachment, and a cross-claim against the Bank for wrongful attachment. The Bank filed its answer to the complaint and cross-claims on June 13, 2001, but did not assert any counterclaims against Fidelity. On June 18, 2001, the NFBM Defendants filed their answer, also asserting a counterclaim against Fidelity and a cross-claim against the Bank for wrongful attachment.

On June 22, 2001, Fidelity filed the instant motion for an order: (i) pursuant to Fed.R.Civ.P. 12(b)(6) dismissing the counterclaims; (ii) pursuant to Fed.R.Civ.P. 22, or, in the alternative, 28 U.S.C. § 2361, discharging Fidelity from this action and permanently enjoining any future proceedings against Fidelity in connection with this matter; and (iii) awarding Fidelity attorneys' fees and costs. On July 18, 2001, the Bank filed a declaration in support of Fidelity's motion seeking dismissal of the counterclaims and discharge from the action, and consenting to Fidelity's request for an injunction with connection to the funds interpleaded in this action. Fidelity filed a Reply Memorandum in support of its motion on July 23, 2001.

This case was reassigned to me on August 30, 2001.

### *DISCUSSION*

### I. *The Interpleader*

Fidelity brought this interpleader action pursuant to Fed.R.Civ.P. 22 and the Federal Interpleader Act, 28 U.S.C. § 1335. Fidelity's interpleader action meets the requirements for both rule and statutory interpleader and can therefore be maintained under both provisions. *See Krishna v. Colgate Palmolive Co.*, No. 90 Civ. 4116, 1991 WL 125186, at *2 (S.D.N.Y. July 2, 1991). Whether statutory or under Rule 22, interpleader is designed to protect stakeholders from undue harassment in the face of multiple claims against the same fund, and to relieve the stakeholder from assessing which claim among many has merit. *Washington Elec. Coop. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir.1993) ("Rooted in equity, interpleader is a handy tool to protect a stakeholder from multiple liability and the vexation of defending multiple claims to the same fund.") (citations omitted); 7 Charles Alan Wright, Arthur R. Miller & Mary

Kay Kane, Federal Practice and Procedure § 1704 (3d ed.2001).

An interpleader action is normally conducted in two stages: during the first stage, the Court determines whether the interpleader action is appropriate and the stakeholder is entitled to bring the action; during the second, the Court determines the rights of the competing claimants to the fund. *Avant Petroleum, Inc. v. Banque Paribas,* 853 F.2d 140, 143 (2d Cir. 1988) (citing *New York Life Ins. Co. v. Connecticut Dev. Auth.,* 700 F.2d 91, 95 (2d Cir.1983)). To determine whether an interpleader action is appropriate, therefore, a court must assess whether the stakeholder "legitimately fear[s] multiple [liability] directed against a single fund, regardless of the merits of the competing claims." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente* (hereinafter *"Clemente"*), No. 98 Civ. 1756, 2001 WL 11070, at *5 (S.D.N.Y. Jan. 4, 2001) (citations omitted); *Washington Elec.,* 985 F.2d at 679 ("[W]hat triggers interpleader is 'a real and reasonable fear of double liability or vexatious, conflicting claims .... ' ") (citation omitted). In applying this test, a court need not analyze the merits of the claims because "[t]he stakeholder should not be obliged at its peril to determine which of two claimants has the better claim." *John Hancock Mutual Life Ins. Co. v. Kraft,* 200 F.2d 952, 954 (2d Cir.1953) (citation omitted); *see also Krishna,* 1991 WL 125186, at *2 ("[S]hort of a plainly frivolous claim, a court's interpleader jurisdiction is not dependent on the merits of the adverse claims.") (citations omitted). Further, "[t]he language of both Rule 22 and 28 U.S.C. § 1335 allow for the invocation of interpleader for the *possibility* of prospective claims." *Krishna,* 1991 WL 125186, at *2 (emphasis added) (citations omitted).

I conclude that Fidelity faced a "real and reasonable fear of double liability or vexatious, conflicting claims" arising out of its restraint of assets pursuant to the Order. Accordingly, this interpleader action is appropriate. *See Washington Elec.,* 985 F.2d at 679 (citation and internal quotation marks omitted).

First, Fidelity was faced with multiple claims against the same pool of assets that were "real and not fancied." *Krishna,* 1991 WL 125186, *6 (citations and internal quotations omitted). Fidelity faced the Bank's claims to the assets on the one hand, evidenced by its application for and securement of the *ex parte* attachment orders, and the counterclaimant defendants' claims to the same assets on the other hand, evidenced by their vigorous opposition to the attachment orders. All defendants besieged Fidelity with correspondence demanding Fidelity's compliance with their conflicting claims; counterclaimant defendants' letters also threatened litigation if Fidelity did not comply with their demands. (DiGennaro Aff. Ex. B, C–G). Fidelity asserts that it honored the Order to avoid facing contempt of Court (Pls. Reply Mem. Supp. Dismiss at 9); indeed, the warrant accompanying the Order instructed Fidelity to deliver the attached property into the Marshal's custody *"without delay."* (Elliott Aff. Ex. F). Upon receipt, Fidelity forwarded the Order to its legal department in an attempt to discern which accounts held by the defendants named in the Order were affected. (Compl.¶ 14). Finally, Fidelity determined to restrict "all known assets registered in the names of the defendants ... pending further order of the Court." (Kessler Decl. Ex. A). In light of the foregoing, I am not persuaded that Fidelity's institution of this action is "so utterly baseless that [its] assertion of multiple claims is not made in good faith." *Viewhaven, Inc. v.*

*Danon*, No. 85 Civ. 9603, 1986 WL 6779, at *3 (S.D.N.Y. June 12, 1986).

Second, Fidelity's conduct shows no evidence of bad faith. Counterclaimant defendants claim that Fidelity acted in bad faith in attaching certain accounts defendants had opened in New Jersey branches, alleging that these accounts are beyond the scope of the Order. (Wang Defs. Mem. Opp. Dismiss at 3–5). Thus, they claim Fidelity acted in bad faith because it credited the Bank's legal opinion that the Order authorized Fidelity's actions. (*Id.*). This claim is without merit, as Fidelity had an independent reasonable basis to believe it was lawfully complying with the Order and acting under compulsion thereof. For example, Fidelity submitted an affidavit attesting to its belief that counterclaimant defendants' accounts contained securities and related records that were situated in New York. (Piccione Aff. ¶ 7). In addition, the affidavit disclosed that Fidelity's affiliate, NFS, which is located in New York, holds securities and funds for FBS and its customers. (Piccione Aff. ¶ 7; ¶¶ 4–5). Therefore, without reaching the merits of defendants' respective claims—which was not required of Fidelity in bringing this action—the evidence demonstrates that Fidelity had a reasonable basis for believing that the accounts opened in its New Jersey branches were subject to the jurisdiction of the Order. Fidelity thus had a reasonable basis for attaching "all known assets registered in the names of the defen-

dants." (Kessler Decl. Ex. A). I find no evidence of bad faith.[2]

The NFBM Defendants also allege that Fidelity entered into "some kind of informal agreement" with counsel for the Bank concerning the Order, and that Fidelity may not be a disinterested stakeholder. (NFBM Defs. Mem. Opp. Dismiss at 16). These allegations are speculative, however, and these defendants point to no evidence that Fidelity acted in bad faith. Moreover, because Fidelity expressly disclaims any interest in the assets and immediately expressed its willingness to deposit the assets with the Clerk of the Court, any allegation of collusive intent is rejected. (Pls. Mem. Supp. Mot. Dismiss at 2–3).

██ Finally, the Wang Defendants claim that Fidelity improperly restrained the trust accounts relying on the Bank's "erroneous" legal opinion that such restraint was authorized is also without merit. (Wang Defs. Mem. Opp. Dismiss at 5). As explained above, in bringing this interpleader action, Fidelity was not required to analyze the merits of each party's claims. Consequently, the accuracy of the parties' various legal opinions was immaterial. *See Clemente*, 2001 WL 11070, at *6 (citing *Viewhaven*, 1986 WL 6779, at *2 ("Moreover, a party is not required to evaluate conflicting claims at his own peril *or to rely on assurances* by one claimant that another's is without merit.")) (emphasis added) (internal citation omitted); *Merrill Lynch, Pierce, Fenner & Smith Inc. v*

---

2. The NFBM Defendants' heavy reliance on *Mendez v. Teachers Ins. and Annuity Assoc. and College Retirement Equities Fund*, 982 F.2d 783, 788 (2d Cir.1992), in support of their bad faith claim is misplaced. In *Mendez*, the Second Circuit affirmed a denial of the interpleader plaintiff's motion for discharge, concluding that the plaintiff's delay in bringing the interpleader action was unreasonable and the action was impliedly brought in bad faith. *Id.* Unlike the case at hand,

however, in *Mendez*, "it became clear" to the interpleader plaintiff that Mendez was entitled to retirement benefits *four or five months before* it filed its interpleader action—which precluded any possible legitimate "conflicting claim" to the fund. Nonetheless, the plaintiff withheld the funds, purportedly awaiting resolution of "conflicting claims"—despite its own apparent knowledge that "[c]learly, there was no matter to resolve." *Id.* at 787–88.

*Snite* (hereinafter "*Snite*"), 216 F.Supp. 197, 198–99 (S.D.N.Y.1963) (finding that plaintiff "should not be required to rely on the assurances of counsel ... that the Sheriff's claim [was] without merit" where it appeared that the California sheriff was an adverse claimant, even though defendant objected that the California attachment did not reach her shares in a corporation not incorporated in California, and where the certificates were located in New York). For the foregoing reasons, I conclude that Fidelity faced a "real and reasonable fear of double liability or vexatious, conflicting claims" arising out of its restraint of assets pursuant to the Order; accordingly, this interpleader action is appropriate. *Washington Elec.*, 985 F.2d at 679 (citation and internal quotation marks omitted).

## II.  *The Counterclaims*

Fidelity moves to dismiss the counterclaims asserted in this interpleader action for failure to state a claim upon which relief may be granted. Specifically, Fidelity argues that neither its adherence to the Order nor its commencement of this interpleader action can be construed as acting in bad faith or unlawfully; counterclaimant defendants have failed to allege any breach of duty or law; and counterclaimant defendants have not alleged any damage caused by Fidelity and have not prayed for relief against Fidelity. For the reasons set forth below, I conclude that dismissal of the counterclaims is warranted as a matter of law.

Counterclaimant defendants brought counterclaims against Fidelity for, essentially, bad faith in honoring the Order and wrongful attachment.[3] Defendants also allege that Fidelity breached a duty to its customers in managing their accounts by continuing the restraint under the Order. I address these arguments in turn.

### A.  *Bad Faith and Wrongful Attachment*

Counterclaimant defendants allege that Fidelity acted in bad faith in "determining to dishonor the objections of [ ] defendants and in determining to honor the orders presented by [the Bank] ... [,]" thereby depriving them of their right to access their accounts. (Wang Defs. Answer ¶ 10; *see* NFBM Defs. Answer ¶ 13). They claim Fidelity restrained their assets pursuant to the Order even though their assets were located in New Jersey, outside the jurisdiction of this Court; therefore Fidelity knew or should have known that the Order did not direct attachment of their assets. (Wang Defs. Answer ¶¶ 6–9; NFBM Defs. Answer ¶¶ 6–7). Finally, they claim that Fidelity chose to ignore legal authority they provided showing that the Order did not reach certain accounts, and instead credited the legal opinion of the Bank that the attachment was authorized. (Wang Defs. Mem. Opp. Dismiss at 4–5).

First, to the extent counterclaimant defendants allege that Fidelity acted in bad faith in enforcing the Order, this claim fails as a matter of law because "[a] bank served with a restraining notice ... has no discretion in deciding whether to honor the notice and may be held liable for damages to a judgment creditor ... for not complying with the notice." *Johnson v. Chem. Bank*, No. 96 Civ. 4262, 1996 WL 706893,

---

**3.**  Although the Wang Defendants continue to dispute the applicability of the London Order (Wang Defs. Mem. Opp. Dismiss at 2), because Fidelity asserts that it attached the assets pursuant to the Order (which all defendants have acknowledged, (*see, e.g.*, Kessler Decl. Ex. A; NFBM Defs. Mem. Opp. Dismiss at 4, 8; Wang Defs. Mem. Opp. Dismiss at 7–8)), I limit discussion to the attachment under the Order.

at *4 (S.D.N.Y. Dec.9, 1996) (citing *Mazzuka v. Bank of N. Am.*, 53 Misc.2d 1053, 280 N.Y.S.2d 495, 499 (N.Y.Civ.Ct.1967) ("Undeniably, the Bank was under a statutory duty owing to plaintiff as judgment creditor to obey the Restraining Notice. That duty was mandated by the Legislature ....")). *See also Sumitomo Shoji New York, Inc. v. Chem. Bank New York Trust Co.*, 47 Misc.2d 741, 263 N.Y.S.2d 354, 357–58 (N.Y.Sup.Ct.1965), *aff'd*, 25 A.D.2d 499, 267 N.Y.S.2d 477 (1st Dep't 1966) (analyzing New York's legislative history and analogizing the provision for restraining notices under C.P.L.R. § 5222 to the provision for attachment under § 6214(b), concluding that "[a] judgment creditor's specification of debt or property in a restraining notice is binding on the person served ... except pursuant to an order of the court"); *Schaeffer v. Chem. Bank*, 107 Misc.2d 548, 435 N.Y.S.2d 474, 475 (N.Y. 1st Dist.Ct.1980) (same). In fact, the warrant accompanying the Order served upon Fidelity explicitly charged:

TAKE NOTICE THAT, AFTER SERVICE HEREOF UPON YOU, NO DEMAND OR PROPERTY HEREBY ATTACHED CAN BE LAWFULLY RELEASED, BY OR OTHERWISE EXCEPT BY THE DIRECTION OF THE UNITED STATES MARSHAL ....

(Elliott Aff. Ex. F).

Fidelity was thus legally required to comply with the Order and had no discretion in "determining to dishonor the objections of [ ] defendants and in determining to honor" this Court's mandate. (Wang Defs. Answer ¶ 10). *See also Schaeffer*, 107 Misc.2d 548, 435 N.Y.S.2d 474, 475 (granting summary judgment in favor of defendant bank where bank continued to restrain account even though restraining notice specified the wrong account, concluding that bank did not act wrongfully in

continuing the restraint because restraining notice is binding on person on whom it is served). Accordingly, the allegations of bad faith are rejected as a matter of law.

Second, to the extent these defendants claim that Fidelity acted in bad faith in attaching assets beyond the scope of the Order, the claim fails again. At bottom, this claim amounts to nothing more than an assumption that, because Fidelity restrained, pursuant to the Order, certain accounts defendants had opened in its New Jersey branches, the restraint must have been taken in bad faith. I conclude that defendants have failed to present sufficient probative evidence from which a jury could reasonably find that Fidelity's restraint of these assets was taken in bad faith.

The Wang Defendants' claim that Fidelity should have known that defendants' legal opinion was correct and that the Bank's opinion that Order authorized restraint of all accounts was flawed. (Wang Defs. Mem. Supp. Dismiss at 4–5). In fact, the parties debate whether the funds and securities in the accounts opened in the New Jersey branches were subject to the Order. The Court need not resolve this question, however, for, at a minimum, Fidelity's belief that these assets were New York assets subject to the Order was reasonable, even if mistaken as a matter of law.

There are "no distinguishing ear-marks of bad faith[,]" *Gottfried v. Gottfried*, 73 N.Y.S.2d 692, 695 (N.Y.Sup.Ct.1947), and a claim for commercial bad faith is stated where " 'a [ ] bank acts dishonestly—where it has actual knowledge of facts and circumstances that amount to bad faith, thus itself becoming a participant in a fraudulent scheme ....' " *Wells v. Bank of New York Co.*, 181 Misc.2d 574, 694 N.Y.S.2d 570, 574–75 (N.Y.Sup.Ct.1999) (quoting *Prudential–Bache Securities, Inc. v. Citibank, N.A.*, 73 N.Y.2d 263, 275, 539

N.Y.S.2d 699, 536 N.E.2d 1118 (1989)). "Neither a lapse of 'wary vigilance' nor 'suspicious circumstances which might well have induced a prudent banker to investigate' constitute an allegation of bad faith." *Id.* (quoting *Prudential–Bache Securities, Inc.*, 73 N.Y.2d at 275, 539 N.Y.S.2d 699, 536 N.E.2d 1118). Similarly, in the context of a fiduciary relationship, "the essential test for bad faith is ... whether the policy of the directors is dictated by their personal interests rather than the corporate welfare." *Gottfried*, 73 N.Y.S.2d at 695.

Fidelity has presented evidence to support its good faith belief that it was complying with the Order. For example, Fidelity submitted an affidavit attesting to its belief that the accounts in question contained securities and related records that were situated in New York. (Piccione Aff. ¶ 7). In addition, the affidavit disclosed that Fidelity's affiliate, NFS, which is located in New York, holds securities and funds for FBS and its customers. (Piccione Aff. ¶¶ 7; ¶¶ 4–5). Moreover, Fidelity has demonstrated that it is a disinterested stakeholder, and defendants have failed to point to any specific evidence of dishonesty on Fidelity's part, or that Fidelity acted for personal gain. Considering all the evidence, I conclude that no factfinder could reasonably find that Fidelity's restraint of these accounts was in bad faith.

Finally, to the extent the NFBM Defendants attempt to bring claims for wrongful attachment against Fidelity pursuant to C.P.L.R. § 6212(e) (NFBM Defs. Mem. Opp. Dismiss at 12), the claims are doomed as a matter of law. Section 6212(e) provides, in part:

> The plaintiff shall be liable to the defendant for all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment if the defendant recovers judgment, or if it

is finally decided that the plaintiff was not entitled to an attachment of the defendant's property.

N.Y. C.P.L.R. § 6212(e). This provision refers to the action in which the attachment was sought—*i.e.*, the related action—where the Bank was the plaintiff and the NFBM Defendants were defendants. Therefore, this claim for wrongful attachment against Fidelity must be rejected as a matter of law.

### B. *Breach of Duty*

The Wang Defendants also allege that Fidelity has a duty not to interfere with a customer's access to its account and that Fidelity unreasonably interfered with this access, breaching its duty to its customers, by continuing to restraint the accounts and "effectively [taking] the [Bank's] side by enforcing the unenforceable attachments." (*Id.* at 8).

This claim is dismissed. As explained above, Fidelity had a statutory duty to obey the Order, and had "no discretion in deciding whether to honor the notice ...." *Johnson*, 1996 WL 706893, at *4; *Mazzuka*, 280 N.Y.S.2d at 499. Consequently, by complying with the Order as mandated by statute, I cannot conclude that Fidelity breached any duties owed to its customers. *See Schaeffer*, 107 Misc.2d 548, 435 N.Y.S.2d at 475 (concluding that a restraining notice is binding upon the person served and that the "temporary dishonor of a customer's checks after service of a restraining notice would not be wrongful").

### III. *Discharge and Further Relief*

Fidelity also moves pursuant to Fed. R.Civ.P. 22, or, in the alternative, 28 U.S.C. § 2361, for discharge from this action and a permanent injunction against any future proceedings resulting from its control over the assets at issue here. Because I have concluded that this inter-

pleader action is appropriate and Fidelity fully complied with the requirements of § 1335, and because no evidence has been presented to suggest that Fidelity's actions were taken in bad faith, Fidelity is entitled to discharge and protection from further liability arising out of any claims to the assets at issue in this action.

### IV. *Attorneys' Fees and Costs*

Lastly, Fidelity moves for an award of attorneys' fees and costs. Attorneys' fees and costs are generally awarded to an innocent and otherwise disinterested stakeholder who has expended time and money participating in a dispute "not of his own making and the outcome of which has as no impact on him." *Companion Life Ins. Co. v. Schaffer*, 442 F.Supp. 826, 830 (S.D.N.Y.1977); *see also Septembertide Publishing B.V., v. Stein and Day, Inc.*, 884 F.2d 675, 683 (2d Cir.1989). Fidelity meets these criteria, and accordingly, is entitled to an award of reasonable attorneys' fees and costs.

### CONCLUSION

For the reasons set forth above, Fidelity's motion is granted in all respects. Fidelity shall deposit the assets at issue with the Clerk of the Court. Defendants are hereby enjoined from asserting any further claims against Fidelity arising out of any claims to the assets at issue in this action. Fidelity shall submit to the Court a detailed accounting of its attorneys' fees and costs and a proposed judgment within ten days hereof.

SO ORDERED.