**AON CORPORATION ACCIDENTAL DEATH AND DISMEMBERMENT PLAN, Aon Corporation Business Travel Accident Plan, Combined Insurance Company of America, as named Fiduciary under the Accident and Travel Plans and as Insurer under the Accident and Travel Plans, and Aon Corporation, as plan sponsor under the Accident and Travel Plans, Plaintiffs,**

v.

**Pamela HOHLWECK, individually as trustee, Robin A. Hohlweck, Todd W. Hohlweck, Randolph T. Hohlweck, Olivia Hohlweck, Mary A. Judge and Estate of Thomas Hohlweck, Defendants.**

No. 01 CIV. 10063(CM).

United States District Court, S.D. New York.

Sept. 3, 2002.

Gilbert M. Goldman, New York City, Allan R. Pearlman, of counsel, New York

City, for Robin Hohlweck, Todd Hohlweck and Randolph Hohlweck.

Marshall L. Goldstein, both Individually and as Trustee, White Plains, NY, for Estate of Thomas Holweck and Pamela Hohlweck.

Gail M. Boggio, McCarthy, Fingar, Donovan, Drazen & Smith, White Plains, NY, for Olivia Hohlweck.

## DECISION AND FINAL JUDGMENT IN INTERPLEADER

MCMAHON, District Judge.

The late Thomas Hohlweck was an executive at Aon Corporation. Like hundreds of Aon employees, he lost his life on September 11, 2001 in the World Trade Center attack. Hohlweck was survived by his second wife Pamela, three adult children from his first marriage, his sister Mary Judge, and an illegitimate daughter, Olivia, who was born in 1996.

Aon purchased two insurance policies on Hohlweck's behalf. The question raised by this lawsuit in interpleader is who among his survivors is entitled to receive 90% of the benefits payable under those policies.

After reviewing the law and the evidence (which is undisputed), I conclude that Robin, Todd and Randolph Hohlweck are entitled to the disputed benefits, as their late father intended.

### STATEMENT OF UNDISPUTED FACTS

Thomas Hohlweck fathered three children with his first wife Anne—Todd (born on 7/11/78), Robin (born on 3/27/81) and Randolph (born on 12/28/83). Thomas and Anne divorced in 1993.

Thomas began dating Pamela in 1995. They broke up in the autumn of that year, and Thomas thereafter had a brief relationship with Susan Ross. Thomas resumed his relationship with Pamela in 1996, but not before fathering Susan's child Olivia, who was born on December 12, 1996. Thomas married Pamela on August 16, 1997.

By petition filed in the Westchester County Family Court, Susan commenced filiation proceedings against Thomas. After a genetic marker indicated a 99.9% likelihood that Thomas had fathered Olivia, Thomas withdrew his objections and admitted paternity. An order of filiation and temporary order of support were issued by the Family Court on August 11, 1997. A permanent order of support superceded the temporary order of support on December 8, 1997.

While Thomas complied with the order and made all ordered support payments in favor of Olivia, that was the extent of his dealings with her. Thomas did not make any voluntary payments to Olivia; he made no gifts to Olivia; he did not visit Olivia. He did not maintain any relationship whatsoever with Olivia. Nonetheless, Susan caused Olivia's surname to be changed from Ross to Hohlweck on October 9, 1997.

By virtue of his employment, and as a benefit of that employment, Thomas was a participant in the Aon Corporation Accidental Death Benefit and Dismemberment Plan ("Accident Plan") and the Aon Corporation Business Travel Accident Plan ("Travel Plan"). He also participated in Aon's Executive Life Insurance Plan, which is not at issue in this case, although I note that the benefits under this plan have been paid out 10% to Pamela, 30% to Todd, 30% to Robin and 30% to Randolph. Olivia was not named as a beneficiary under this policy.

Neither was Olivia named as a beneficiary under the Accident and Travel Plans. Thomas executed a Beneficiary Designation form for each of those plans on December 9, 1997—the day after the Family

Court made permanent his support obligation for Olivia, and thus at a time when Thomas was well aware of her existence. Thomas's December 9, 1997 beneficiary designations were identical under the two plans: 10% of the benefits were to be paid to Pamela in her own right, and 90% of those benefits were to be paid to Pamela "in Trust for Robin A. Hohlweck, Todd W. Hohlweck, and Randolph T. Hohlweck." *See* Todd Hohlweck Aff., Ex. A.

Thomas designated his sister, Mary Judge, as the "contingent beneficiary" under the Plans. *Id.*

The Plan documents for the Accident and Travel Plans contain explanations of how benefits are to be paid. The terms of the Accident Plan provide that benefits will be paid:

To the beneficiary named in writing on file with the Policy holder. If your beneficiary dies before You (or if You did not name a beneficiary), We will pay your Accidental Death Benefits to Your living relatives in the following order: (1) legal spouse, or (2) children, including stepchildren and legally adopted children in equal amounts. If none of these relatives are living, We will pay your Accidental Death benefit to Your estate.

Complaint, Ex. B. The terms of the Travel Plan provide substantially the same thing:

Benefits will be paid to the beneficiary named in writing. If no beneficiary is named in writing, benefits will be paid to your spouse, if living, or to Your children in equal shares, if living, or to your Estate.

Pamela has been paid her 10% outright under the Plans. No other amounts have been paid under the Accident and Travel Plans.

Thomas was not a lawyer. Neither a Last Will and Testament nor a trust document executed on or before December 9, 1997 has been found since his death.

Whether those documents ever existed, or whether they are part of the ash and embers that floated to the ground in the wake of the attack, will probably never be known. As far as the Westchester County Surrogate's Court is concerned, Thomas died intestate and Pamela is his Administratrix.

## THIS PROCEEDING

The Plans commenced this action in interpleader seeking a determination of who is entitled to receive the 90% share of the Plan benefits that was to pass to Pamela in trust for Thomas's three legitimate children: to Pamela as trustee; to the three children who were specifically designated as beneficiaries; to Pamela outright; to Mary Judge as contingent beneficiary; or to Thomas's Estate, where they will be shared by Pamela and all four children under the laws of intestacy. All parties were served and all have appeared except Mary Judge.

Todd, Robin and Randolph have moved for summary judgment, seeking to have the benefits distributed directly to them. Pamela moves for summary judgment, seeking to have the benefits distributed to Todd, Robin and Randolph, or failing that, to her outright. And Olivia moves for summary judgment, seeking to have the benefits pass to the Estate.

## DISCUSSION

I. *Interpleader*

Aon brought this interpleader action pursuant to Fed.R.Civ.P. 22. Interpleader is designed to protect stakeholders, such as Aon, from undue burden in the face of multiple claims against the same fund, and to relieve the stakeholder from assessing which claim has merit. *Fidelity Brokerage Services v. Bank of China,* 192 F.Supp.2d 173, 177 (S.D.N.Y.2002);

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1704 (3d ed.2001).

An interpleader action usually has two stages. During the first stage, the Court determines whether the interpleader action is appropriate and the stakeholder is entitled to bring the action. To determine whether an interpleader action is appropriate, a court must assess whether the stakeholder "legitimately fear[s] multiple [liability] directed against a single fund, regardless of the merits of the competing claims." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente*, No. 98 Civ. 1756, 2001 WL 11070, at *5 (S.D.N.Y. Jan. 4, 2001). The stakeholder may be discharged in an interpleader action. A discharge in interpleader "permits the neutral stakeholder having no claim to the subject matter of the action, to retire from the action and requires competing claimants to interplead their claims." *Aliuga v. Perera Co., Inc.*, 494 F.Supp. 18, 20 (S.D.N.Y.1979). On March 19, 2002, with the consent of the parties, I entered an order finding that Aon's interpleader action was appropriate and discharging Aon from this action pursuant to Fed.R.Civ.P. 22. Aon deposited the disputed funds into an escrow account with the Clerk of this Court.

During the second stage of an interpleader action, the Court determines the rights of the competing claimants.

## II. *Summary Judgment Standard*

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court will grant summary judgment if the evidence offered shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court views the record in the light most favorable to the non-movant and re-

solves all ambiguities and draws all reasonable inferences against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Donahue v. Windsor Locks Bd. of Fire Commn'rs*, 834 F.2d 54, 57 (2d Cir. 1987).

Therefore, when the material facts are undisputed, it is appropriate for a Court to resolve questions of law and enter judgment directing payment of the disputed fund to the appropriate party.

## III. *The Relevant Law: ERISA*

The Accident and Travel Plans are subject to the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.

Under ERISA, an ERISA Plan Administrator must act "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). Distribution of benefits is governed by this rule. Benefits are paid to the beneficiary, a term statutorily defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may be entitled to a benefit thereunder." 20 U.S.C. § 1002(8).

In determining who is the beneficiary, one must look first to the plan document itself. If the Plan document is clear, that ends the matter. If the document is ambiguous, or fails to provide for a particular contingency, the Court is to look to the federal common law, and thereafter to the analogous state law. The parties agree that there is no federal common law germane to the instant situation. Therefore, to the extent the Plan document itself is not determinative, I must look to the law of the State of New York.

In this case, the terms of the Plan do not provide for the particular contingency that has arisen. Thomas designated a beneficiary—Pamela—to take 10% for

herself and 90% in trust for Robin, Todd and Randolph. But as far as anyone knows, Thomas failed to create a trust, with Pamela as Trustee, to receive the proceeds. Whether the beneficiary designation can be honored is a question of New York law.

## IV. The Relevant Law: New York Estates, Powers & Trust Law, § 13–3.3

■ The validity of the beneficiary designation executed by the Decedent is governed by New York law. The New York Estates, Powers & Trusts Law ("EPTL") § 13–3.3, as amended in 1976, provides, in relevant part, that:

(a) The proceeds of a ... death benefit, ... accident and health insurance policies ... may be made payable to a trustee designated as beneficiary in the manner prescribed by this section and names as:

(1) Trustee under a trust agreement or declaration of trust *in existence at the date of such designation*, and identified in such designation, and such proceeds shall be paid to such trustee....

EPTL § 13–3.3 (Emphasis added). Thus, as a matter of New York law, no trustee can take death benefits unless the trust was in existence before he or she was designated as the beneficiary under the policy. Pamela cannot take as trustee for Randolph, Robin and Todd; that designation fails.

If Pamela cannot take because of § 13–3.3, what happens to the money? That, it seems, depends on whether the persons who have the real beneficial interest in the death benefits are named in the designation of beneficiary.

In *Matter of Stein*, 131 A.D.2d 68, 520 N.Y.S.2d 157 (2d Dep't 1987), *motion for leave to appeal denied*, 72 N.Y.2d 840, 526 N.E.2d 46, 530 N.Y.S.2d 555 (1988), the decedent purchased a life insurance policy and named "James Hume as Trustee" as beneficiary of the policy. The beneficiaries of the purported trust were not named. Twenty days later, the decedent executed a trust agreement appointing James Hume as trustee of the insurance proceeds. According to the trust document, Hume was to satisfy any valid claims for the decedent's unpaid debts, *and*, after all of the claims were satisfied, to pay the remaining proceeds to decedent's estate. *Id.*, 131 A.D.2d at 69, 520 N.Y.S.2d 157. When decedent died, the plaintiff stakeholder ("Greater Beneficial") paid Hume the face value of the policy less outstanding loans. Upon the application of one of decedent's creditors, the Public Administrator of Suffolk County was appointed administrator of the estate and commenced a discovery proceeding in Surrogate's Court against Hume and Greater Beneficial, seeking recoupment of the life insurance proceeds because the trust named as beneficiary was not in existence when the beneficiary was designated. The Surrogate dismissed Greater Beneficial's claim, holding that the decedent could properly designate Hume as a trustee beneficiary prior to the actual execution of the trust agreement. *Id.*, 131 A.D.2d at 70, 520 N.Y.S.2d 157.

The Appellate Division, Second Department, reversed. It held that the "designation of Hume as trustee-beneficiary was in violation of [EPTL § 13–3.3(a)] and was invalid." *Id.*, 131 A.D.2d at 72, 520 N.Y.S.2d 157. The Second Department ruled, "that the proceeds of a life insurance policy may be made payable to a trustee designated as beneficiary only if (1) the trustee has been named under a trust agreement in existence at the date of such designation, and (2) the trust agreement is identified in the beneficiary designation." *Id.*, 131 A.D.2d at 69, 520 N.Y.S.2d 157. Since the trust agreement was executed after the designation was made, the trustee designation was invalid, and the matter was remitted to Surro-

gate's Court for further proceedings. · *Id.*, 131 A.D.2d at 72, 520 N.Y.S.2d 157.

*Estate of Stewart,* 158 Misc.2d 349, 601 N.Y.S.2d 400 (1993), presented a similar fact pattern, but with a critical (and ultimately determinative) difference. *Stewart* was commenced in interpleader in the Southern District of New York. All issues relating to the distribution of the net proceeds of the insurance policy in that case were certified to the Bronx County Surrogate. *Stewart,* 158 Misc.2d at 350, 601 N.Y.S.2d 400.

In *Stewart,* a life insurance designation of beneficiary form indicated that the insured intended that proceeds of the policy be paid 25% to his spouse, 25% to his adult daughter, and 50% to his three minor children with the proviso that, in the event that the children were minors upon his death, his mother or adult daughter was to hold the proceeds in trust for the minor children until they attained their majority. No trust had been created at the time of the execution of the designation of beneficiary form. *Id.* 158 Misc.2d at 350–51, 601 N.Y.S.2d 400.

■ In *Stewart,* the Surrogate held that the proceeds of the policy should be paid to the minor children in accord with the clear wishes of the decedent, even though no valid trust was in existence when the policy's beneficiaries were designated. *Id.,* 158 Misc.2d at 354, 601 N.Y.S.2d 400. *Stewart* distinguished *Stein,* noting that "in *Stein,* at the time that the designation of beneficiary form was executed there was no document in existence which provided who was to have the real beneficial interest in the insurance proceeds. All that was known at the time was that the trustee was to have legal title as the bene-

ficiary of the proceeds for the parties yet to be designated." *Id.,* 158 Misc.2d at 350, 601 N.Y.S.2d 400.[1] Because the decedent in *Stewart* had named the intended beneficiaries, the Court ordered that the proceeds be paid directly to the children or to their guardian to be held until they reached majority. "If an instrument identifies who is to have the beneficial interest in the property and names a trustee to hold legal title but fails to provide any duties for the trustee, title to such a passive trust does not vest in the trustee, but vests in the intended beneficiary." *Stewart,* 158 Misc.2d at 354, 601 N.Y.S.2d 400.

The Surrogate in *Stewart* relied on a decision by New York County Surrogate Lambert in *Estate of Acquaah,* New York Law Journal, February 7, 1990, p. 23, col. 1. In *Acquaah,* the decedent designated her son as the sole beneficiary of a life insurance policy. She also directed that, if the policy was paid out while her son was a minor, the funds should be given to her sister to hold in trust. *Id.* There was no dispute that the decedent had never executed a trust agreement with respect to the policy or its proceeds. Thus, the court was presented with the question whether to pay proceeds to the son's general guardian or to the decedent's sister as trustee.

The court in *Acquaah,* following EPTL § 13–3.3, held that, "the proceeds of a life insurance policy may be paid to a trust designated as a beneficiary only if the trustee has been named under a trust agreement in existence at the date of the designation, and the trust agreement is identified in the beneficiary designation." *Id.* at p. 23, col. 1. However, the *Acquaah* court ordered the proceeds paid to the

---

1. Though the Bronx Surrogate did not mention it, it is also significant that the trust beneficiary ultimately designated in *Stein* was not any particular individual(s), but the decedent's estate. In *Stein,* the decedent named Hume as trustee in order to control the payment of his debts after his death. There were no "beneficiaries" in the sense that there were in *Stewart* and are in this action.

general guardian of decedent's minor son, thus passing the assets to the individual who was their intended recipient as named in the policy's beneficiary designation.

## V. *The Answer*

I conclude that the benefits should be paid to Todd, Robin and Randolph Hohlweck.

First, I do not find *Stewart/Acquaah* and *Stein* to be inconsistent, as has been urged. The factual distinction between the two cases explains why the respective courts reached different results, and the distinction strikes me as both meaningful and persuasive.

The facts of the instant case are more closely analogous—indeed, are virtually identical to—those in *Stewart/Acquaah.* Here, as in *Stewart* and *Acquaah,* the decedent made a defective designation to the purported trustee of a non-existent trust, but indicated in the same insurance designation of beneficiary form who would have been the beneficiaries under that trust— his three legitimate children. Applying *Stewart* and *Acquaah,* a New York court would ignore the trustee designation (which is invalid under EPTL § 13–3.3) and simply award the benefits to the designated objects of the decedent's bounty: Randolph, Robin and Todd. Their motion for summary judgment is granted, as is Pamela's to the extent she sought payment of the benefits to them.

Olivia's cross motion for summary judgment is without merit regardless of the result under EPTL § 13–3.3, because in no event would she be entitled to a share of the Plan benefits. Assuming arguendo that *Stewart* is wrong, and that the failed designation of Pamela as trustee invalidates the underlying gift to the three intended beneficiaries, two living beneficiaries—one designated by Thomas and one by the Plan itself—take ahead of his four children. As noted above, Thomas desig-

nated an alternative (i.e., contingent) beneficiary—his sister Mary Judge. Under the terms of the Plan, she—a named beneficiary—would take first if New York law did not permit the benefits to pass directly to the intended beneficiaries of the failed trust. And if Thomas's designation of Mary as contingent beneficiary also failed, the unequivocal terms of the Plans call for the benefits to pass outright to the first default beneficiary—Thomas's legal spouse (Pamela). Only if he had no legal spouse would the Plan pay the benefits to Thomas's children.

## CONCLUSION

Pamela, Todd, Robin and Randolph's motion for summary judgment is granted to the extent of directing the Clerk of the Court to pay the benefits to Todd, Robin and Randolph. Olivia's motion is denied. The Clerk of the Court is directed to release the moneys placed in Escrow by Aon Corporation in accordance with this opinion and then to close the case.

This constitutes the decision and order of the Court.